**STATE of Missouri, Respondent,**

v.

**Eddie Stephan FEELER, Appellant.**

No. 42906.

Missouri Court of Appeals,
Eastern District,
Division Three.

Jan. 26, 1982.

Stephen C. Ludwinski, St. Louis, for appellant.

John Ashcroft, Atty. Gen., Kristie Green, Nancy Appelquist, Asst. Attys. Gen., Jefferson City, Bradley Lockenvitz, Pros. Atty., Linn, for respondent.

REINHARD, Presiding Judge.

Defendant was convicted by a jury of stealing 25 pigs in violation of Section 570.-030.2(3)(h) RSMo. 1978 [1] and was sentenced to one year in the county jail. He appeals raising three points of alleged trial court error. We find that none of them have merit and affirm defendant's conviction.

The defendant's father-in-law, Louis Mehrhoff, was the primary witness against him. According to Mehrhoff's testimony at trial, on the evening of March 6, 1979, he and the defendant drove defendant's pickup truck to the Carl Rhoads' farm in Osage County, where they took 25 small pigs. The next day, he and the defendant drove to the Montgomery County Livestock Auction Sale Barn where the pigs were sold. On March 19, Mehrhoff confessed to the county sheriff's office that he alone committed the crime and later in August, he pleaded guilty to stealing. On August 16, 1979, he gave a second statement to the sheriff's office implicating the defendant. Subsequently, the defendant was charged with violating § 570.030.2(3)(h) by stealing "25 weaning pigs," a class C felony.[2] Mehrhoff had not been sentenced as of the time of defendant's trial.

Defendant's principal point of error is that the trial court erred in not permitting Mehrhoff's wife, Fay, to relate conversations she had with her husband which would have impeached his testimony. At the time of trial, Mehrhoff testified he had not been promised anything in exchange for his testimony and did not know what sentence he would receive for his guilty plea. In an attempt to establish Mehrhoff had been promised leniency in return for his testimony, the defendant called Fay Mehrhoff to the stand. She was asked whether Louis had discussed the case with her after he had consulted with his attorney. Before she could answer, the confidential privilege between husband and wife was asserted, and the wife was prohibited from answering.

At common law a husband or wife was not a competent witness to testify either before or against the other spouse, nor was one spouse allowed to divulge confidential communications arising out of the marriage relationship. *State v. Euell*, 583 S.W.2d 173, 175 (Mo. banc 1979). A confidential communication is one exchanged between husband and wife when they are alone. *State v. Montgomery*, 571 S.W.2d 784, 787 (Mo.App.1978). At common law, this privilege applied in all actions or proceedings, even though neither spouse was a party to the action. *See, Moore v. Wingate*, 53 Mo. 398, 409 (1873); *Martin v. State*, 33 So.2d 825 (Miss. banc 1948); 97 C.J.S. *Witnesses* § 273, p. 779. The common law rule has been codified in virtually every state and these statutes are considered merely declaratory of the common law. *State v. Euell*, 583 S.W.2d 173, 175–176 (Mo. banc 1979).

Also, at common law the testimony of the wife of an accomplice or co-defendant was not admissible. 97 C.J.S. *Witnesses* § 103, p. 511. *See, State v. Burnside*, 37 Mo. 343 (1866). In Missouri, § 546.260 retains the common law prohibition against disclosure of confidential communications, but removes the disability of the wife of a defendant or a co-defendant from testifying in the defendant's behalf. Section 546.260 provides:

> [N]o person on trial or examination, nor wife or husband of such person, shall be required to testify, but any such person may, at the option of the defendant, testify in his behalf, or on behalf of a codefendant, ... provided, that *in no case shall husband or wife*, when testifying under the provisions of this section for a defendant, *be permitted to disclose confidential communications had or made between them in the relation of such husband and wife*. (emphasis added).

We are concerned only with the confidential communication privilege between

---

1. All citations are to RSMo. 1978 unless otherwise stated.

2. Section 570.030.2(3)(h) makes stealing a class C felony if "the property appropriated consists of: ... any animal of the species of horse, mule, ass, cattle, *swine*, sheep or goat." (emphasis added).

husband and wife and not the disqualification of a husband or wife to testify on the other's behalf. Defendant contends the underlined portion in the statute above prohibits only the disclosure of confidential communications by the spouse of the defendant on trial, and has no application here, to the disclosure of confidential communications by a spouse of an accomplice not on trial. There have been no Missouri cases which have reached this factual situation, but regardless of whether or not the underlined language prohibits the testimony, it is still inadmissible. This is because our statute is primarily an enabling act, enacted to relieve against certain common law disabilities. Unless a provision of § 546.260 repeals the common law rule, it continues in effect. *State v. Kollenborn*, 304 S.W.2d 855, 861 (Mo. banc 1957). The statute does not declare that the spouse of an accomplice may disclose confidential communications when testifying for the defendant. If it had, defendant's point would be well taken. Since the statute does not permit the testimony, the general common law rule against disclosure of confidential communications by a spouse in any proceeding continues. Defendant's offer of proof establishes that Fay would disclose a confidential communication and it is therefore, inadmissible. Defendant's point is without merit.

■■ Next, defendant contends the trial court erred in failing to submit instructions embodying MAI–CR2d 2.10 and 2.12 to the jury. Although defendant has failed to file the instructions submitted to the jury with the record on appeal, our review of the transcript enables us to glean the number of instructions and the corresponding approved instructions from which they were drawn.

Instruction No. 5 patterned after MAI–CR2d 24.02.1 was given as the state's verdict director.[3] Neither MAI–CR2d 2.10[4] nor 2.12[5] were given. We acknowledge the Notes on Use to MAI–CR2d 2.10 provide, "MAI–CR 2.10 and MAI–CR 2.12 must be given, whether requested or not, when there is any evidence that the defendant acted with others, either as an active participant or one who aided, agreed to aid or attempted to aid another in planning, committing or attempting to commit an offense." Nevertheless, it is our obligation to judicially determine the prejudicial effect of the failure to give a required instruction. Rule 28.02(e). Here, we find no prejudice. A defendant may not complain of a jury instruction which operates to his advantage. *State v. Lowery*, 565 S.W.2d 680, 683–84 (Mo.App.1978). The case was submitted to the jury under an instruction permitting a

3. If you find and believe from the evidence beyond a reasonable doubt:
   First, that (on or about) [date] in the (County) of _____, State of Missouri, the defendant appropriated [describe property or services] (owned by) [name of victim] and without his consent, and
   Second, that the defendant appropriated such (property) for the purpose of disposing of (it) in such a way that made recovery by the owner unlikely (and)
   (Third, that (the property appropriated was [insert any type of property from the list in Section 570.030(3) ] ), (and))
   (Fourth, that the defendant is not entitled to an acquittal by reason of Instruction No. _____,)
   then you will find the defendant guilty (under Count _____) of stealing without consent.

4. Paragraph 2 of 2.10 provides "A person is criminally responsible for the conduct of another in committing a particular offense when, either before or during the commission of an offense, with the purpose of promoting the

commission of that offense he aids such other person in committing that offense.

5. If you find and believe from the evidence beyond a reasonable doubt:
   First, that (on) (on or about) [date] ( [name of person] with the aid or attempted aid of defendant) (committed) the offense of [briefly identify the offense . . .], and
   Second, that the defendant, either before or during the (commission) of the offense of [name of offense, such as "burglary in the first degree" or "disturbing a judicial proceeding,"] with the purpose of promoting its commission, (aided) such other person in (committing) that offense,
   then you (will) find the defendant guilty of [name of offense . . .] (, unless you find and believe from the evidence that it is more probably true than not true that the defendant is entitled to an acquittal by reason of Instruction No. _____).

guilty verdict only on a finding that the defendant personally committed each and every element of the offense. Under MAI–CR2d 2.10 and 2.12 the actions of the defendant's father-in-law would have been legally attributable to the defendant. Thus, the instruction actually submitted, MAI–CR2d 24.02, placed a heavier burden on the state than MAI–CR2d 2.12, the instruction required by the Notes on Use. *See, State v. Heitman,* 589 S.W.2d 249, 255–56 (Mo. banc 1979).

 Finally defendant contends the trial court erred in denying his motion for judgment of acquittal because the evidence established he had stolen pigs but not swine as required by the statute. Webster's Third New International Dictionary defines a "pig" as "a young swine of either sex that has not reached sexual maturity." There is no merit to defendant's contention.

Affirmed.

SNYDER and CRIST, JJ., concur.