STATE of Missouri, Respondent,

v.

Ronald L. POTTER, Appellant.

No. 15189.

Missouri Court of Appeals,
Southern District,
Division One.

Feb. 11, 1988.

Motion for Rehearing Transfer to
Supreme Court Denied March 1, 1988.

Application to Transfer Denied
April 19, 1988.

Ronald A. Conway, Asst. Public Defender, Springfield, for appellant.

William L. Webster, Atty. Gen., Elizabeth Levin Ziegler, Asst. Atty. Gen., Jefferson City, for respondent.

HOLSTEIN, Judge.

Appellant Ronald L. Potter (Defendant) appeals, having been convicted of sexual abuse in the first degree in violation of § 566.100 [1] and sentenced to three years in the state penitentiary. Defendant raises five points on appeal, four of which involve the admissibility or sufficiency of the evidence.

The evidence presented at trial indicated that the victim of the offense was defendant's daughter, H.P., who was four years old at the time of the offense, but five years old at the time of trial. H.P. and her two brothers were apparently in foster care in December of 1985. The act of sexual abuse occurred on Christmas Eve, 1985, while the children were visiting in the home of defendant and their mother.

H.P. was called by the State as a witness and testified as follows:

Q. Do you remember the Christmas before last when you were at Daddy Ron and Mommy Virginia's?
A. Yes.
Q. And you went to sleep that night?
A. Yes.
Q. And your brother was in the room with you?
A. Yes.
Q. Did anyone come into the room?
A. Yes.
Q. Who came into the room?
A. Daddy Ron and Mama Virginia.
Q. And what did they do when they came into the room, what did Daddy Ron do?
A. Poked me with the scissors.
Q. Where did he poke you?
A. Down in the pee-pee.
Q. And did you have your clothes on?
A. No.
Q. Who took your clothes off?
A. Daddy Ron.
Q. And did Daddy Ron say anything to you?
A. No.
Q. Do you know a monster?
A. Yes.
Q. And who is the monster?
A. Daddy Ron.
Q. And do you know when the monster's dressed and undressed?
A. Yes.
Q. What is it when the monster's undressed?
A. His pee-pee is long.

Other evidence presented at trial indicated that "Daddy Ron" was the name by which the child referred to defendant.

Prior to trial, the court conducted a hearing outside the presence of the jury to determine the admissibility of certain out-of-court statements made by H.P. regarding the sexual assault. Pursuant to that hearing, the court found that the time, content, and circumstances of the statements made by the child provided sufficient indicia of reliability. § 491.075.[2] The out-

---

1. Unless otherwise indicated, all references to statutes are to RSMo 1986, and all references to rules are to Missouri Rules of Court, V.A.M.R.

2. Section 491.075 provides:
   1. A statement made by a child under the age of twelve relating to an offense under chapter 565, 566 or 568, RSMo, performed with or on a child by another, not otherwise admissible by statute or court rule, is admissible in evidence in criminal proceedings in the courts of this state as substantive evidence to prove the truth of the matter asserted if:
   (1) The court finds, in a hearing conducted outside the presence of the jury that the time, content and circumstances of the statement provide sufficient indicia of reliability; and
   (2) The child either:
   (a) Testifies at the proceedings; or
   (b) Is unavailable as a witness.
   . . . .

of-court statements of the child which were offered in evidence included statements made to the child's foster mother on Christmas morning, 1985, to an emergency room physician later the same day, to a social worker on December 26, 1985, and to psychologist Roy Grando during the course of the child's hospitalization in January of 1986. In each of the statements, the child complained that a "monster" had entered the room in which she was sleeping on Christmas Eve of 1985, had removed her clothing, and had touched or rubbed her "bottom" either with his hands or a foreign object. Evidence indicated also that the child used the word "bottom" to mean the vaginal area. In each instance, the "monster" was identified as "Daddy Ron."

Grando holds a doctorate in Human Development and Family Studies and has specialized in psychological counseling with children and teenagers for seven years. He identified common behavioral characteristics found in children who have been sexually abused. He testified that he found some of those characteristics exhibited by H.P.

■ Among the issues raised in Point I, defendant complains that the trial court should not have permitted Grando to describe the characteristics common among children who had suffered from sexual abuse because such opinion was not shown to be generally accepted in the scientific community. See *State v. Taylor*, 663 S.W.2d 235 (Mo. banc 1984). No objection was made claiming that Grando's opinions had no general scientific acceptance. In the argument portion of defendant's brief, he cites *State v. Ellis*, 710 S.W.2d 378 (Mo. App.1986), apparently for the proposition that evidence of characteristics of sexually abused children is not a proper subject of expert testimony because it improperly invades the province of the jury. No such objection was raised at trial, nor is it preserved in the points relied on.

Defendant also raises in Point I and as part of Point II the complaint that Grando's testimony and the testimony of the foster mother, social worker, and emergency room physician relating H.P.'s statements to each of them, amounted to impermissible bolstering and vouching for H.P.'s trial testimony. After a careful review of the transcript, we find no objection to any of the testimony of the above-named witnesses suggesting to the trial court that such testimony impermissibly bolstered or vouched for the testimony of H.P.

■ An assignment of error on appeal regarding the admission of evidence at trial must be based upon the theory stated in the objection at trial, and an accused cannot expand or change on appeal the objection as made at trial. *State v. Woods*, 723 S.W.2d 488, 496 (Mo.App.1986). Because there was no objection to the scientific reliability of Grando's opinions, no objection was made that his opinions invaded the province of the fact-finder and no objection was made that the out-of-court statements amounted to impermissible bolstering or vouching for H.P.'s testimony, defendant is foreclosed from asserting these claims of error on appeal. While defendant makes no claim that the admission of this evidence was plain error, a review of the record indicates that the admission of the evidence did not result in manifest injustice or miscarriage of justice. Rule 29.12(b).

■ Turning to the other points raised under Point I, defendant claims that Grando was not qualified to give his opinion and that his opinions were not based on facts in evidence. Defendant's brief cites no authority for the proposition that Grando's education and experience specializing as a clinical child psychologist are inadequate to qualify him as an expert. The test of expert qualification is whether the witness has knowledge from education or experience which will aid the trier of fact, and the qualification of an expert is a matter resting primarily in the sound discretion of the

---

3. A statement may not be admitted under this section unless the prosecuting attorney makes known to the accused or his counsel his intention to offer the statement and the particu-

lars of the statement sufficiently in advance of the proceedings to provide the accused or his counsel with a fair opportunity to prepare to meet the statement.

trial court. *State v. Mallett*, 732 S.W.2d 527, 537 (Mo. banc 1987). We find no abuse of discretion.

In support of the claim that Grando testified as to facts not in evidence when he testified as to common characteristics of sexually abused children, defendant cites cases involving experts who were giving testimony in response to a hypothetical question. *Garrett v. Joseph Schlitz Brewing Co.*, 631 S.W.2d 652 (Mo.App.1982); *State v. Schmidt*, 530 S.W.2d 424 (Mo.App. 1975); *State v. Johnson*, 504 S.W.2d 334 (Mo.App.1973). These cases are all cases in which an expert witness gave an opinion based upon essential facts which the witness did not observe and which were not in evidence. The questions posed to Grando were not based on any hypothesized facts, but upon Grando's expert knowledge of characteristics common among sexually abused children and his direct observations of H.P.'s behavior. Assuming the question asked of Grando was a hypothetical question, the defendant's objection failed to call the court's attention to what facts were omitted from the hypothetical question. Such failure on the part of defendant justifies the trial court in overruling the objection. *Pettet v. Bieterman*, 718 S.W.2d 188, 193 (Mo.App.1986).

Subordinate to Point II of defendant's brief, he complains that he was not informed by the State of the State's intent to use H.P.'s out-of-court statements to the foster mother, the social worker, the emergency room physician, and Dr. Grando until the morning of trial in violation of § 491.075.3. Therefore, defendant argues, the trial court erred in permitting the witnesses to testify as to H.P.'s statements.

Section 491.075.3, on which defendant relies, makes no provision for sanctions. However, Rule 25.16, relating to sanctions for failure to comply with discovery in criminal cases, is applicable in this situation. See *State v. Mills*, 723 S.W. 2d 68, 69 (Mo.App.1986). Under Rule 25.-16, in order to justify a reversal of a conviction because of a failure of the trial court to impose sanctions, the defendant must show that the nondisclosure resulted in fundamental unfairness or prejudice to substantial rights of the defendant. *State v. Sykes*, 628 S.W.2d 653, 656 (Mo.1982).

The record reflects that defendant was informed of the contents of the witnesses' statements well in advance of trial. The only relief sought by defendant was the exclusion of the testimony. Less drastic relief, such as a continuance, was not sought. The State did not conceal the statements, nor can defendant claim he was surprised the State intended to offer the statements. The defendant has failed to suggest what he would or could have done differently had he been given a specific notice of the State's intent to offer the statements. Because the defendant failed to request the less drastic relief of a continuance and because he has failed to demonstrate prejudice, this point is denied. See *State v. Lingar*, 726 S.W.2d 728, 738 (Mo. banc 1987); *State v. Mills, supra*, at 70.

Defendant also argues under Point II that because H.P. made several statements inconsistent with testimony of other witnesses or which the child later recanted, the trial court erred in finding that the time, content, and circumstances of H.P.'s statements made to each of the witnesses had sufficient indicia of reliability as required by § 491.075.1(1), and the court should have excluded H.P.'s statements.

H.P.'s statement to her foster mother was made within a matter of minutes after the child had left the presence of the defendant on Christmas morning. Later that same day in a hospital emergency room, H.P. made a similar statement to a physician. The following day, the same events were reported by H.P. to a social worker with the Division of Family Services visiting in H.P.'s foster home. The statements H.P. made to Dr. Grando were made during a hospital stay and during interviews by a psychologist trained in interviewing young children regarding sexual abuse. All of the statements were made near the date of the events reported by the child. Considering the child's age, each statement was remarkably consistent with the others insofar as it related the events

of Christmas Eve of 1985. Section 491.-075.1(1) accords the trial court discretion to determine whether the time, content and circumstances of a child's statement provide sufficient indicia of reliability to justify its admission into evidence. We find no abuse of discretion in this case.

Point III of defendant's brief asserts he was denied his constitutional rights to confront and cross-examine witnesses, to due process, and to equal protection of the law when the court permitted H.P. to testify. Defendant's argument attacks the constitutionality of § 491.060(2) and also asserts that because he "established at the pretrial hearing that H.P. is incapacitated ...," he was denied the opportunity to confront and cross-examine her. Section 491.060 provides, in part, as follows:

The following persons shall be incompetent to testify:

(1) A person who is mentally incapacitated at the time of his production for examination;

(2) A child under ten years of age, who appears incapable of receiving just impressions of the facts respecting which he is examined, or of relating them truly; provided, however, that except as provided in subdivision (1) of this section, a child under the age of ten who is alleged to be a victim of an offense under chapter 565, 566 or 568, RSMo, shall be considered a competent witness and shall be allowed to testify without qualification in any judicial proceeding involving such alleged offense. The trier of fact shall be permitted to determine the weight and credibility to be given to the testimony; ...

■ The argument attacking the constitutionality of § 491.060(2) was squarely addressed in *State v. Williams*, 729 S.W.2d 197 (Mo. banc 1987). For the reasons discussed at length in that opinion, § 491.060(2) does not violate defendant's constitutional right to confront and cross-examine witnesses, his right to due process, or his right to equal protection of the laws.

The second part of defendant's argument under Point III presupposes that H.P. was incapacitated as that term is used in § 491.060(1). A witness is said to be incapacitated when such witness exhibits some mental infirmity and fails to meet traditional criteria for witness competence. *State v. Beine*, 730 S.W.2d 304, 307–308 (Mo.App. 1987).

The only evidence suggested by defendant which indicates that H.P. suffered from a mental infirmity came from William Joseph Howitt, a physician in general practice, who testified that he examined H.P. on one occasion. The examination consisted of asking approximately twenty questions primarily relating to H.P.'s physical health. When asked if she was experiencing headache, runny nose, nausea or pain, the child responded affirmatively that she suffered from every symptom mentioned. Defendant's attorney asked Dr. Howitt if H.P. was able to receive and evaluate information or to communicate decisions to such an extent that she could meet her needs for food, clothing, shelter, and other care such that physical illness is not likely if she were on her own. The doctor opined that H.P.'s ability to do so would be unreliable. Apparently the question was borrowed from the terminology in § 475.010(8) which defines "incapacitated person" as used in Chapter 475 relating to guardianships.

■ Even if one is under guardianship because he has been found to be an "incapacitated person" under Chapter 475, he is not necessarily disqualified as a witness. In appropriate circumstances, testimony may be accepted from a person who has been adjudicated incompetent under the guardianship law. *State v. Beine, supra.*

Dr. Howitt further testified he had no opinion as to whether H.P. was able to distinguish between the real and unreal. He admitted that because of the limited understanding of a four-and-a-half or five-year old, if the child had ever experienced any of the symptoms mentioned, such child might answer his questions in the affirmative.

■ We find nothing in Dr. Howitt's testimony or elsewhere in the record to indicate that H.P. suffered from any men-

tal infirmity or that she was of less than ordinary intelligence for a child her age. Contrary to defendant's arguments, H.P.'s statements, in court and out, demonstrated that she was oriented as to time, place, and person and that she was able to communicate, albeit in the limited vocabulary of a child her age, the events which occurred on the date in question. Because the premise that H.P. was incapacitated fails, the conclusion that defendant was denied the right to confront and cross-examine her must fail.

▇▇▇▇▇ In Point IV of defendant's brief, he contends that the court erred in giving Instruction No. 5 because the instruction varies from the pattern instruction. Paragraph first of Instruction No. 5 reads as follows:

> First, that on or about the 24th day of December, 1985, in the County of Taney, State of Missouri, the defendant touched the genitals or anus of H.P. *through the clothing or against the skin,* and.... (emphasis added)

Paragraph first of MAI–CR3d 320.16.2 reads as follows:

> First, that (on) (on or about) (at about [*time of day or night*] on) (between the hours of [*times of day or night*] on) [*date*], in the (City) (County of ___, State of Missouri, the defendant touched the (genitals) (or) (anus) (or) (breast) of [name of victim] (through the clothing), and....

Defendant correctly asserts that a burden is on a party deviating from the approved instruction to show the deviation was not prejudicial. *State v. Oliver,* 720 S.W.2d 45, 46 (Mo.App.1986). The giving or failing to give a pattern instruction is deemed to constitute error, but the prejudicial effect is a matter to be determined on appeal. *State v. Steward,* 734 S.W.2d 821, 825 (Mo. banc 1987); Rule 28.02(e).

Defendant argues that he was prejudiced because some of the jurors may have found him guilty of touching H.P. through her clothing while other jurors may have found him guilty of touching her against the skin; thus, the jury may have returned less than a unanimous verdict, citing *State v. Oswald,* 306 S.W.2d 559 (Mo.1957).

In *Oswald,* an instruction was given which allowed conviction if the defendant inserted his genital organ into the mouth or rectum of the victim. There, the court determined these were separate offenses. Under the instruction given, it could not be determined that there was a concurrence of twelve jurors on one definite charge, and the instruction was prejudicial.

▇▇▇ In this case, there was but one act of "sexual contact" as defined in § 566.010.1(3). The gravamen of the offense was the touching of the genitals for the purpose of sexual arousal. Whether the touching was through the clothing or otherwise was inconsequential. Neither of the specific findings were essential to establish the offense. Submitting the alternatives in paragraph first of the instruction merely added to the State's burden and was not prejudicial to defendant. See *State v. Creviston,* 735 S.W.2d 91, 95 (Mo. App.1987); and *State v. Oliver, supra.*

In his final point, defendant asserts that the child's testimony was inherently so conflicting and unbelievable as to cloud the mind of the court and, because such testimony is uncorroborated, the trial court should have sustained defendant's motion for judgment of acquittal.

The conflicting and unbelievable testimony to which defendant refers is testimony by H.P. at a deposition or prior hearing that she had taken off her own pajamas on the night in question and that persons other than defendant had cut, touched, or inserted foreign objects in her "pee-pee." At trial, H.P. testified that defendant had removed her pajamas and that others had not touched or inserted objects in her vagina. In addition, defendant points to the fact that at trial H.P. only recalled talking to Dr. Grando on one occasion about this, but Grando testified he had talked to her on six occasions.

In support of this contention, defendant cites *State v. Burke,* 719 S.W.2d 887, 888 (Mo.App.1986). The *Burke* case does not aid defendant's position. There, the court said:

... Inconsistencies related to unimportant details or minor points of a nonessential nature are not considered to be "clouded with doubt." As long as her testimony about the essential matters of the crimes charged are without conflict, her uncorroborated testimony is sufficient evidence to make a submissible case. "The occasional lapse of fact does not undermine the probity of that proof," ... especially if the lapse occurs in the testimony of a child. (Citations omitted)

Here, the unwaivering consistency in the child's statements as to the essential details of the crime stand in stark contrast to collateral inconsistencies relating to who removed her pajamas, whether others had sexually abused her, and how often she saw Dr. Grando. H.P.'s testimony regarding the essential details of the crime was more than sufficient to remove any "cloud of doubt." The weight and credibility of the child's testimony was for the trier of fact to decide. § 491.060(2).

The judgment is affirmed.

CROW, C.J., and GREENE, P.J., concur.